382 F.2d 176
 127 U.S.App.D.C. 227
 WOOD, WIRE AND METAL LATHERS INTERNATIONAL UNION, AFL-CIO, Appellant,
v.
John T. DUNLOP, Individually and as Impartial Chairman of
the Appeals Board, etc., et al., Appellees.
EMPLOYING METALLIC LATHERS ASSOCIATION OF GREATER NEW YORK
AND VICINITY, Appellant,
v.
John T. DUNLOP, Individually and as Impartial Chairman of
the Appeals Board, etc., et al., Appellees.
CONTRACTING PLASTERERS AND LATHERS INTERNATIONAL
ASSOCIATION, Appellant,
v.
John T. DUNLOP, Individually and as Impartial Chairman of
the Appeals Board, etc., et al., Appellees.
EMPLOYING LATHERS ASSOCIATION OF CHICAGO, Appellant,
v.
John T. DUNLOP, Individually and as Impartial Chairman of
the Appeals Board, etc., et al., Appellees.
 Nos. 20716, 20727, 20728, 20769.
 United States Court of Appeals District of Columbia Circuit.
 Argued March 15, 1967.
Decided July 28, 1967, Certiorari Denied Dec. 4, 1967, See
88 S.Ct. 467.
 
 Mr. Mozart G. Ratner, Washington, D.C., attorney for appellant in No. 20,716, argued on behalf of all appellants.
 Mr. Louis Sherman, Washington, D.C., with whom Messrs. Thomas X. Dunn and Charles R. Donnenfeld, Washington, D.C., were on the brief, for appellee Dunlop and certain other appellees.
 Mr. Jerome H. Simonds, Washington, D.C., was on the brief for appellants in Nos. 20,727 and 20,769.
 Mr. Axel W. Oxholm, Washington, D.C., Was on the brief for appellant in No. 20,728.
 Messrs. Hugh Lynch, Jr. and Gerald W. Farquhar, Washington, D.C., were on the brief for appellee National Acoustical Contractors Ass'n, and others.
 Messrs. Guy Farmer and John A. McGuinn, Washington, D.C., filed a brief on behalf of Building and Construction Trades Department, AFL-CIO, Associated Gereral Contractors of America, and Participating Specialty Contractors Employers' Ass'ns, as amicus curiae, urging affirmance.
 Messrs. Francis X. Ward and William McGowan, Washington, D.C., entered appearances for United Brotherhood of Carpenters & Joiners of America, AFL-CIO.
 Before BURGER, TAMM and ROBINSON, Circuit Judges.
 PER CURIAM.
 
 
 1
 This case involves a jurisdictional dispute between the Wood, Wire and Metal Lathers International Union (Lathers) and the Carpenters and Joiners of America (Carpenters) which resulted in a 'national decision' by an arbitration board to allocate the 'bulk' of light iron work on ceiling systems to the Carpenters rather than to the Lathers.
 
 
 2
 The case is on appeal to this court from the granting in the District Court of defendants' (appellees here) motion for summary judgment. The Lathers sued the members of the arbitration board and the Carpenters union, among others, in that court to set aside that board's decision on the basis that the board had exceeded its jurisdiction when it rendered a 'national decision.' Although contending that the board had exceeded its jurisdiction, the essence of this suit is an effort to enforce a collective bargaining contract known as the 'Plan for Settling Jurisdictional Disputes Nationally and Locally' (hereinafter called the Plan). The contracting parties are on the one side, the Building and Construction Trades Department (hereinafter called the Department), a federation of labor organizations in the building trades-- including the Lathers and Carpenters-- and on the other side, various employers' associations in the building and construction industry. The appellees here,[1] the Joint Board and Hearing Panel, are arbitration tribunals established by the Plan. The Lathers and Carpenters are parties to the Plan by reason of their affiliation with the Department and, in particular, by virtue of the provisions of Article X of the constitution of the Department which provides:
 
 Jurisdictional Disputes
 
 3
 All jurisdictional disputes between or among affiliated National and International Unions and their affiliated Local Unions and employers shall be settled and adjusted according to the present plan established by the Building and Construction Trades Department, or any other plan or method of procedure adopted in the future by the Department for the settlement of jurisdictional disputes. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the Department and upon all affiliated National or International Unions and their affiliated Local Unions.
 
 
 4
 Article II, Section 6, of the constitution of the Department provides that it is an object and principle of the Department:
 
 
 5
 To secure the adjustment of trade and jurisdictional disputes in the building and construction trades industry along practical lines as they may arise from time to time; and such decisions to be final and binding on all affiliated National and International Unions and their affiliated Local Unions.
 
 
 6
 Article II, Section 2, of the Plan provides:
 
 
 7
 There shall be established a National Joint Board for the settlement of jurisdictional disputes in the building and construction industry.
 
 
 8
 Section 4 of this same Article also provides:
 
 
 9
 It shall be the duty of the Joint Board to consider and decide cases of jurisdictional disputes in the building and construction industry, which are referred to it by any of the International Unions involved in the dispute, or an employer directly affected by the dispute on the work in which he is engaged or by a participating organization representing such employer.
 
 
 10
 In 1965, the Lathers appealed to the Appeals Board pursuant to Article III, Section 5, of the Plan from a 'job decision' adverse to their position in this jurisdictional dispute. Thereafter, the Appeals Board voted to suggest to the Joint Board that Article III, Section 5, of the Plan be invoked with respect to the Lathers' and Carpenters' dispute. Section 5 reads:
 
 
 11
 The Joint Board may at its discretion and after conference between contesting unions, held by the Chairman of the Joint Board, refer a repetitive dispute which it finds not to be governed by a decision or agreement of record to the Impartial Umpire for mediation and the establishment of a hearing panel and a national decision.
 
 
 12
 The Joint Board voted to process the dispute. The chairman of the Joint Board arranged conferences between the Lathers and Carpenters unions and assisted in bringing together committees of the two unions in an attempt to settle the dispute. The results were fruitless. Thereafter, the Joint Board met and reviewed the history of the dispute between the Lathers and Carpenters. The Joint Board then explicitly found 'that there is no recognized decision or agreement of record covering the items in dispute' and voted to refer the jurisdictional dispute to the Impartial Umpire in accordance with Article III, Section 5, of the Plan. Ultimately, the Hearing Panel rendered a 'national decision' which allocated the 'bulk' of the light iron work on ceilings to the Carpenters.
 
 
 13
 The plaintiffs, appellants here, contend that there was a recognized decision or agreement of record which covered the work allocation involved and that the invocation of Article III, Section 5, was improper. The Plan incorporates certain jurisdictional argeements which are recognized under the provisions of Article III, Section 1(a), which reads:
 
 
 14
 In making a job decision the Joint Board shall utilize the following criteria: Decisions and agreements of record as set forth in the Green Book (the Plan), valid agreements between affected International Unions attested by the Chairman of the Joint Board, established trade practices and prevailing practice in the locality.
 
 
 15
 In particular, the Lathers contend that a 1903 alleged 'agreement of record' between the Lathers and Carpenters allocated jurisdiction on the basis of the character of the components being installed-- wood to Carpenters and light iron to the Lathers. Appellants also contend that a 1920 decision of record, binding on all affiliated unions, allocated metallic lathing of all descriptions to the Lathers. In regard to this argument, the Hearing Panel interpreted in their decision the meaning of Article III, Section 5, as follows:
 
 
 16
 The Lathers argue that the National Joint Board should have first made an explicit ruling on the question of whether or not the cited agreement or decision of record 'exists.' There is no such requirement on the National Joint Board in Article III, Section 5. The decisive issue is not whether an agreement or decision 'exists,' but rather whether it governs or controls, whether it determines, the dispute. The National Joint Board has repeatedly and consistently held the agreement and decision cited by the Lathers do not govern or determine disputes between Lathers and Carpenters on the installation of ceiling systems.
 
 The Hearing Panel explicitly found:
 
 17
 * * * That there was no violation of the Plan and that the action of the National Joint Board was proper at its meeting of November 23, 1965, in referring certain jurisdictional disputes to the Impartial Umpire under Article III, Section 5 of the Plan.
 
 
 18
 The District Court held, in an unpublished oral ruling-- and we agree-- that Article III, Section 5, of the Plan confers jurisdiction on the Joint Board to make a determination whether the dispute is or is not governed by a decision or agreement of record. The Joint Board's action was explicit in this regard, since it made such a finding in writing; id est, that the agreement and the decision did not govern this dispute.
 
 
 19
 In a case involving this same Plan in the context of a jurisdictional dispute, the Court of Appeals for the First Circuit[2] reiterated the language of the Supreme Court in United Steelworkers of America v. Warrior and Gulf Navigation, 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). The inquiry '* * * must be strictly confined to the question of whether the reluctant party did agree to arbitrate the grievance or did agree to give the arbitrator the power to make the award he made.'
 
 
 20
 Our review is in keeping with this, and we conclude that the signatory parties conferred jurisdiction on the Joint Board to determine whether there existed a controlling agreement or decision of record, and, if finding none, to invoke Article III, Section 5, of the Plan. Finally, we conclude that the Board acted within the scope of its authority.
 
 
 21
 Affirmed.
 
 
 
 [1]
 Joined as appellees are the Carpenters Union, National Acoustical Contractors Association, Gypsum Drywall Contractors International, as well as the Joint Board and the Hearing Panel, both as units and individually
 
 
 [2]
 Sheet Metal Workers' International Union, etc. v. Aetna Steel Prod. Corp., 359 F.2d 1, 5 (1 Cir. 1966). The court also noted, in discussing the jurisdiction dispute before it: 'We may observe that if such force is to be given to collective bargaining agreements between management and unions, no less support should be given agreements to which unions resort to resolve their jurisdictional disputes. There is no question here but that the dispute falls within the kinds of controversy envisaged.'