507 F.2d 1053
 88 L.R.R.M. (BNA) 2254, 75 Lab.Cas. P 10,560
 LOCAL 416, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION
(AFL-CIO), Plaintiff-Appellee,
v.
HELGESTEEL CORPORATION, Defendant-Appellant.
LOCAL 498, IRONWORKERS (AFLCIO), Plaintiff-Appellant,
v.
LOCAL 416, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION
(AFL-CIO), Defendant-Appellee.
IRONWORKERS LOCAL 498 OF the INTERNATIONAL ASSOCIATION OF
BRIDGE, STRUCTURAL AND ORNAMENTAL IRONWORKERS
(AFL-CIO), Plaintiff-Appellant,
v.
HELGESTEEL CORPORATION, Defendant-Appellee.
 Nos. 72-1932, 73-1194 and 73-1530.
 United States Court of Appeals, Seventh Circuit.
 Argued April 9, 1974.
Decided Dec. 27, 1974.
 
 Charles D. Hoornstra, Gerald C. Nichol, Madison, Wis., for helgesteel.
 David Loeffler, Milwaukee, Wis., for Local 416.
 Bernard M. Baum and Daniel S. Shulman, Chicage, Ill., for Ironworkers Local 498.
 Before SWYGERT, Chief Judge, SPRECHER, Circuit Judge, and NOLAND, District Judge.[1]
 SWYGERT, Chief Judge.
 
 
 1
 These appeals were consolidated for briefing and oral argument. Appeal No. 72-1932 is from the district court's grant of enforcement of a bipartite arbitration award to Local 416, Sheet Metal Workers International Association, AFL-CIO (sheet metal workers) against Helgesteel Corporation. Appeal No. 73-1194 is from the grant of the sheet metal workers' motion for summary judgment on the complaint of Local 498, International Association of Bridge, Structural and Ornamental Ironworkers, AFL-CIO (ironworkers) seeking to compel the sheet metal workers and Helgesteel to submit a jurisdictional dispute involving all of the parties to the National Joint Board for the Settlement of Jurisdictional Disputes (national joint board). The final appeal docketed, No. 73-1530, is from a later grant of Helgesteel's motion for summary judgment in the same case. The district court had jurisdiction of both cases pursuant to 301 of the Labor Management Relations Act, 29 U.S.C. 185.
 
 
 2
 The underlying facts which gave rise to these appeals, are as follows. Helgesteel, a Wisconsin corporation is a general contractor in the building and construction industry. In connection with its work Helgesteel has collective bargaining agreements with the ironworkers, the sheet metal workers, and other construction unions. Part of the company's business is the erection of preengineered steel buildings which consists of constructing the steel superstructure and the covering of the skeleton with sheet metal walls and roof. The latter processes are known respectively as 'skinning' and 'decking.' It is that which is the heart of this controversy. Both the sheet metal workers and the ironworkers claimed the right to perform this work. Prior to August 1968, Helgesteel hired ironworkers to erect the superstructure and sheet metal workers to cover it. In August of 1968, the company, in violation of its existing collective bargaining agreement with the sheet metal workers, agreed to a collective bargaining agreement with the ironworkers which assigned the skinning and decking operations to them. The company required that the employees performing that work switch from the sheet metal workers to the ironworkers. All of the employees but one complied and he was fired.
 
 
 3
 Pursuant to article X of its collective bargaining agreement with the company, the sheet metal workers filed a grievance with the Local Joint Adjustment Board complaining of the company's actions in reassigning the work to the ironworkers.[2] The board, which was composed of representatives of the union and of sheet metal contractors, found on October 8, 1968 that the company had violated the collective bargaining agreement by assigning work traditionally performed by the sheet metal workers to the ironworkers. The board assessed $10,000 as liquidated damages for the breach of the agreement and also ordered the company to pay $710.40 to the discharged employee who refused to switch to the ironworkers. The company refused to pay and the sheet metal workers then brought suit in the district court in 1969 to enforce the arbitration award pursuant to 301 of the Labor Management Relations Act.
 
 
 4
 In April of 1970, an official of the company informed the business representative of the ironworkers that the company might have to have sheet metal workers perform the skinning and decking operations rather than ironworkers because of the pending litigation with the sheet metal workers. Pursuant to their collective bargaining agreement, the ironworkers and the company submitted the issue to arbitration. On July 3, 1970, the arbitrator concluded the company was bound under its collective bargaining agreement with the ironworkers to assign the skinning and decking work to the ironworkers. The ironworkers then filed suit in the district court to enforce its bipartite arbitration award alleging that the company had continued to threaten to reassign the disputed work to the sheet metal workers.
 
 
 5
 The ironworkers suit to enforce its contract with Helgesteel, which was consolidated with the suit filed earlier by the sheet metal workers against Helgesteel, was later dismissed by stipulation. Helgesteel then filed a complaint against the ironworkers seeking to compel them to force the sheet metal workers to arbitrate the jurisdictional dispute and requesting that the ironworkers be ordered to pay Helgesteel any money damages which it might be required to pay under the sheet metal workers' suit; but this complaint was also dismissed by stipulation when the ironworkers agreed to bring suit to compel the sheet metal workers and Helgesteel to seek tripartite arbitration. Accordingly, the ironworkers brought a fresh law suit which sought relief against the sheet metal workers. It was based on article X of the Constitution of the Building and Construction Trades Department of the AFL-CIO which provides:
 
 
 6
 All jurisdictional disputes between or among affiliated National and International Unions and their affiliated Local Unions and employers shall be settled and adjusted according to the present plan established by the Building and Construction Trades Department, or any other plan or method of procedure adopted in the future by the Department for the settlement of jurisdictional disputes. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the Department and upon all affiliated National or International Unions and their affiliated Local Unions.
 
 
 7
 A portion of the complaint was against Helgesteel and was based on the ironworkers collective bargaining agreement with the company which provided in relevant part:
 
 
 8
 Any dispute as to the proper interpretation of this agreement shall be handled in the first instance by a representative of the Union and the Employer, and if they fail to reach a settlement within five (5) days it shall be referred to a Board of Arbitration composed of one (1) person appointed by each party, the two (2) so appointed to select a third member. In the event that the two (2) so appointed arbitrators are unable within two (2) days to agree upon the third arbitrator, they shall jointly request the Federal Mediation and Conciliation Service to furnish a panel of five (5) names from which the third member shall be selected. The decision of the Board of Arbitration shall be handed down within two (2) days after the selection of the third member and the decision of the Board of Arbitration shall be final and binding upon both parties. During such time as the matter is pending before the committee, there shall be no work stoppage.
 
 
 9
 The Board of Arbitration shall have jurisdiction over all questions involving the interpretation and application of any section of this agreement, but may not add to or subtract from the wording of this agreement. It shall not be empowered to handle negotiations for a new agreement, changes in the wage scale, or jurisdictional disputes.
 
 
 10
 In answer to first suit filed, the sheet metal workers suit to enforce its bipartite arbitration award of damages, the company maintained that article XI, rather than article X of their collective bargaining agreement controlled. The company contended that article XI required that the sheet metal workers submit their grievance to the national joint board since it involved a jurisdictional dispute between the sheet metal workers and the ironworkers. Article X, provides in pertinent part:
 
 
 11
 SECTION 1. Grievance of the Employer or the Union, arising out of interpretation or enforcement of this Agreement, shall be settled between the Employer directly involved and the duly authorized representative of the Union, if possible. An Employer may have the local Association present to act as his representative.
 
 
 12
 SECTION 2. Grievances not settled as provided in Section 1 of this Article may be appealed by either party to the Local Joint Adjustment Board in the area in which the work is performed and such Board shall meet promptly on a date mutually agreeable to the members of the Board but in no case more than fourteen (14) calendar days following the request for its services, unless the time is extended by mutual agreement of the parties, to render a final and binding determination, except as provided in Section 3 of this Article. The Board shall consist of an equal number of representatives of the Union and of the local Employer's Association and both sides shall cast an equal number of votes at each meeting. Article XI provides:
 
 
 13
 SECTION 1. Agreements, national in scope, between Sheet Metal Workers' International Association and other international unions, covering work jurisdiction and the assignment, allocation and division of work among employees represented for the purposes of collective bargaining by such labor organizations, shall be respected and applied by the Employer, provided such agreements have been consummated with the knowledge of and without objection from Sheet Metal and Air Conditioning Contractors' National Association, Inc.
 
 
 14
 The district court granted the sheet metal workers' request for enforcement of its arbitration award against the company and also granted to the company and the sheet metal workers summary judgment on the ironworkers' complaint for national joint board arbitration.
 
 
 15
 The district judge in his judgment enforcing the sheet metal workers' arbitration award framed the main issue and gave his reasons for the decision:
 
 
 16
 The language of Article X of the collective bargaining agreement between the Sheet Metal Workers and the defendant is broad. Absent express language that the parties had selected a forum other than the Local Board for work assignment disputes, I am reluctant to infer that the parties rejected that forum. This reluctance is based not only upon the ordinary principles governing the construction of private contracts, but also upon a concern for the policies underlying the federal common law of labor relations. In enacting the Labor Management Relations Act, Congress expressed a policy favoring the settlement of labor disputes by the parties through the machinery of private arbitration. Under 301, the courts are to enforce the awards of arbitrators unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Steelworkers v. Warrior & Gulf Company, 363 U.S. (574) 575, 582-583 (80 S.Ct. 1347, 4 L.Ed.2d 1409) (1960).
 
 
 17
 Defendant argues that despite this well-established Congressional and judicial preference for final and binding arbitration, Article X should be construed to exclude work assignment disputes, because Article X does not create a forum capable of resolving the entire controversy, in a manner which binds all interested parties. If enforced, the defendant contends, this award will serve to fragment rather than to resolve this dispute, because eventually the Iron Workers will bring this controversy before the National Joint Board. The defendant also stresses the important national labor policy of encouraging internal union machinery for the adjudication of intra-union differences.
 
 
 18
 I am not persuaded that these policies outweigh the broad language of Article X. See Cary (Carey) v. Westinghouse, 375 U.S. 261, 265 (84 S.Ct. 401, 11 L.Ed.2d 320) (1963); contra Jennings v. M. & M. Transportation Company (104 N.J.Super. 265), 249 F.2d (A.2d) 631 (N.J.Sup.Ct.1969). It may be that the Sheet Metal Workers are bound by two inconsistent contracts: the Helgesteel agreement channeling work disputes to the Local Joint Adjustment Board, and the Constitution of the Building and Construction Trades Department requiring jurisdictional disputes to be submitted to the National Joint Board. If in choosing to submit this dispute to the Local Board, the plaintiff has violated the Constitution of the Building and Construction Trades Department, it is subject to whatever sanctions may exist for that violation.
 
 
 19
 In the ironworkers suit to compel the company and the metal workers to initiate tripartite arbitration proceedings before the national joint board, the district judge in granting summary judgment to both defendants concluded that the dispute was not a continuing one since the sheet metal workers had only asked for damages and the sheet metal workers' collective bargaining agreement had terminated.
 
 
 20
 Because of the decision that we reach, it is only necessary to deal with one of the issues raised on appeal: whether article X of the building trades constitution which requires submission of this dispute to the national joint board is applicable to the sheet metal workers and Helgesteel pursuant to article XI of their collective bargaining agreement.
 
 
 21
 The ironworkers and the company jointly contend that the phrase in article XI of the steel workers' collective barbargaining contract, 'agreements, national in scope, between Sheet Metal Workers' International Association and other International Unions, covering work jurisdiction and the assignment, allocation and division of work' includes the building trades constitution. The sheet metal workers make the countercontention that this phrase means 'substantive agreements between International Unions as to who will represent people performing particular tasks.' The sheet metal workers maintain that unlike the collective bargaining agreement between the ironworkers and the company, supra at 4-5 article XI of the collective bargaining agreement between the sheet metal workers and the company 'made no express reference to the National Joint Board.' The reason for this according to the sheet metal workers was that 'Article XI was concerned with the substantive standards for resolving work allocations disputes, not with the forum in which those standards would be applied.'
 
 
 22
 All the parties to this appeal agree that 'in order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements.' Transportation-Communication Employees Union v. Union Pacific Railroad Co., 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966). Mr. Justice Black went on to say for the court in that case that 'this is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments.'
 
 
 23
 If we were to follow the sheet metal workers urging of a narrow construction in interpreting the term 'agreements' in article XI, we would have to ignore the existence of the building trades constitution. Although there was some evidence that that may have been the very intention of the draftsman of the contract for the sheet metal workers, the language used does not allow such a conclusion. There is no limitation on the types of interunion agreements which are covered in article XI. To accept the restricted construction would mean, as the district judge noted, that the sheet metal workers as well as the company would be bound by inconsistent agreements. Under the sheet metal workers' agreement with the company, the jurisdictional dispute would have to be submitted to bipartite arbitration by the local joint board, while under the building trades constitution to which both unions are signatories and under the collective bargaining agreement with the ironworkers, the dispute would have to be submitted to tripartite arbitration by the national joint board.
 
 
 24
 Article XI of the collective bargaining agreement between the company and the sheet metal workers, not article X, controls. The jurisdictional dispute should have been submitted to the national joint board.
 
 
 25
 The sheet metal workers contend that even if the dispute should have been submitted to the national joint board, they are still entitled to damages for breach of the contract under article X of their collective bargaining agreement. Such an interpretation of the contract, however, would allow inconsistent final arbitration awards; the national joint board may say that the work should be assigned to the ironworkers while the local joint board has awarded damages to the sheet metal workers. We cannot accept that interpretation of the agreement. Only one forum is provided for resolving this dispute, the national joint board.
 
 
 26
 Since there is still a question of damages as well as a question as to whether the disputed work came within the jurisdiction of the sheet metal workers or the ironworkers, we reverse the final judgments of the district court in these three appeals and remand the cases with direction that the parties be ordered to initiate proceedings to resolve this jurisdictional dispute before the National Joint Board for the Settlement of Jurisdictional Disputes.
 
 Reversed and remanded with direction.[3]
 
 
 [1]
 Judge James E. Noland of the Southern District of Indiana is sitting by designation
 
 
 [2]
 Article X is set forth on p. 5, infra
 
 
 [3]
 Circuit Rule 23 shall not apply