SHEET METAL WORKERS INTERNA-
TIONAL ASSOCIATION, LOCAL UN-
ION # 49, AFL–CIO, Plaintiff-Appel-
lant,

v.

LOS ALAMOS CONSTRUCTORS, INC., a
New Mexico Corporation,
Defendant-Appellee.

No. 76–1073.

United States Court of Appeals,
Tenth Circuit.

Submitted Jan. 25, 1977.

Decided March 7, 1977.

Gerald R. Bloomfield of Kool, Kool, Bloomfield & Eaves, Albuquerque, N. M., for plaintiff-appellant.

Kenneth R. Brandt, Albuquerque, N. M. (Duane C. Gilkey, Albuquerque, N. M., on the brief), of L. J. Maveety, Los Alamos, N. M., and Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., for defendant-appellee.

Before LEWIS, Chief Judge, and PICK-ETT and BARRETT, Circuit Judges.

BARRETT, Circuit Judge.

Sheet Metal Workers International Association, Local Union # 49, AFL-CIO, (Union) appeals from a summary judgment dismissing its complaint with prejudice, with a proviso that the dismissal order would not affect the right of either Union or Los Alamos Constructors, Inc., a New Mexico corporation (Constructors), defendant-appellee, to initiate proceedings before the Impartial Jurisdictional Disputes Board or to appeal from any decision of the Board.

Union filed the complaint below pursuant to 29 U.S.C.A. § 185(a) and (c) of the National Labor Relations Act, as amended, to

enforce a decision of the National Joint Adjustment Board rendered on November 8, 1973, directing Constructors to pay Union an award of $30,760.32 as damages for violation by Constructors of its collective bargaining agreement with Union concerning the assignment of work on a particular project. Constructors raised four defenses in its answer: (1) that the parties had agreed that the dispute should have been submitted to the Impartial Jurisdictional Disputes Board for the settlement of this jurisdictional dispute, (2) that the National Joint Adjustments Board of the Sheet Metal Industry lacked jurisdiction or power to hear the matter in dispute or to enter an award against Constructors, (3) that the Union did not exhaust its administrative remedies by reason of its failure to submit the dispute for resolution by the Impartial Jurisdictional Disputes Board, and (4) that the Union's claim was barred by the doctrine of laches.

For convenience, the National Joint Adjustment Board will be referred to as NJAB and the Impartial Jurisdictional Disputes Board will be referred to as IJDB. The case was submitted for a decision of the trial court based upon the pleadings, the Stipulation of Facts with exhibits attached, and the briefs of the parties. A recital of pertinent facts follows.

Union and Constructors were signatories to a collective bargaining agreement entered into on April 1, 1968, which, as renewed, was in effect at all pertinent times. Constructors was also a signator to a collective bargaining agreement with the International Association of Bridge, Structural and Ornamental Ironworkers Local Union No. 495 (Ironworkers), which was also in force and effect at all pertinent times. Union, Ironworkers, and Constructors were signatories to and bound by the substantive and procedural rules adopted by the Jurisdictional Disputes Board, created by a plan promulgated by the Building and Construction Trades Department of the AFL-CIO for settling jurisdictional disputes, nationally and locally. That board is now known as the Impartial Jurisdictional Disputes Board (IJDB).

Constructors obtained a contract on March 23, 1972, with the Federal government to modify the ventilator system located in the Los Alamos Scientific Laboratory building at Los Alamos, New Mexico. Constructors allocated the work so that Union would fabricate and install all materials of US No. 10 gauge or lighter and Ironworkers would fabricate and install all materials heavier than US No. 10 gauge. Constructors has at all times contended that this assignment was consistent with a national agreement between Union and Ironworkers and was in accord with past custom and practice of Constructors in making work assignments between the two unions. Constructors thus assigned portions of certain work on the project to Union and Ironworkers, i.e., so that Union would fabricate and install all materials of US No. 10 gauge or lighter and Ironworkers would fabricate and install all materials heavier than US No. 10 gauge.

Union objected to the work assignment, contending that its collective bargaining agreement with Constructors required that it be assigned all of the work involved in the fabrication and installation of any "airveyor system" regardless of the gauge of material used. However, in October, 1972, Union and Ironworkers commenced work on the ventilator system on the basis of the work assignment made by Constructors. Prior thereto, representatives of Constructors had met with those of Union and Ironworkers on several occasions to discuss and to attempt to work out any problems involved in the work allocation. When Union claimed that it was entitled to all of the work regardless of the gauge, Constructors requested international officers of Union and Ironworkers to resolve the dispute. Such a conference was held but the dispute was not resolved. When Union persisted, Constructors on several occasions demanded that Union submit its claim to the IJDB, but Union refused to do so. Then, in January, 1973, Union filed a grievance with a local adjustment board composed of repre-

sentatives of Union and the New Mexico Sheet Metal Contractors Association. Constructors refused to appear before that board, in view of its position that the dispute was jurisdictional in nature rather than one of grievance. Constructors challenged that forum. The local board and the regional board thereafter found for the Union but deadlocked on the issue of damages. On November 23, 1973, the national Sheet Metal Workers Board awarded damages to Union and against Constructors in amount of $30,760.32 for Constructors' refusal to assign all of the work to Union. Constructors did not appear at any of these hearings, nor did it participate in any proceedings had, all of which were jurisdictionally dependent upon the collective bargaining agreement between Union and Constructors. Each of the proceedings were, as a result of Constructors' refusal to participate, conducted on an *ex parte* basis.

On November 29, 1973, Constructors petitioned the IJDB. Union, through its national representatives, advised IJDB that there was no longer any dispute concerning the work assignment. Thereupon, the IJDB did not proceed. Union then filed the instant action in the District Court, to enforce the $30,760.32 award.

Constructors has steadfastly maintained that the dispute here involved is a jurisdictional dispute which must be submitted exclusively to the IJDB. Constructors contends that it did not petition IJDB at the outset of the controversy in light of its good faith belief that only one of the two unions involved could invoke the jurisdiction of IJDB.

On appeal, Union asserts that the trial court erred in refusing to enforce the decision and award of the NJAB for the following reasons: (1) that the rule with regard to resolution of disputes in accordance with a procedure set forth in the collective bargaining agreement between Union and Constructors controls; that under that agreement, the decision of the arbitrator or NJAB as to the construction, interpretation, or application of the agreement is controlling; that a court is not free to substitute

its interpretation for that of the arbitrator or NJAB when it is asked to enforce an award; and that the merits of an award are not reviewable by the courts, and (2) that while any one of the three parties involved could have submitted the controversy to the IJDB, none elected to do so until after the fact, i.e., after Union had obtained a favorable decision and award from NJAB; and that Constructors, having failed to invoke the jurisdiction of IJDB at the inception of the dispute, is now estopped to complain.

The sole issue before us—just as it was before the District Court—is that of determining the issue of proper forum, i.e., a jurisdictional determination. The District Court found, *inter alia,* (a) that because Union reported that neither it nor Ironworkers would release their respective claims for assignment of the work involved and that no further meetings would be held with Constructors in an effort to settle the dispute relative to the assignment of the work, the dispute was a jurisdictional dispute based upon Stipulation of Fact No. 11 and the interpretation of the parties, and (b) that the contracts and agreements of the parties were designed to decide and settle the type of dispute here involved before an impartial forum with a minimum of time and injury to the parties involving a hearing forum designed to resolve jurisdictional disputes rather than a grievance arising from a collective bargaining agreement, *per se.* The court concluded that the difference between the parties involved a jurisdictional dispute and not a grievance, thus a matter to be determined exclusively by IJDB.

I.

■ Union alleges that the rule with regard to resolution of disputes in accordance with the procedures set forth in the collective bargaining agreement between Union and Constructors controls; that under this agreement the decision of the arbitrator or NJAB as to the construction, interpretation, or application of the agreement is controlling; and that a court is not free to substitute its interpretation for that of the arbi-

trator or NJAB when asked to enforce an award and that the merits of an award are not reviewable by the courts.

Union relies upon the general rule that so long as an award by an arbitrator or arbitration board draws its essence from a collective bargaining agreement, it is immune from attack. *See: Yellow Cab Company v. Democratic Union Organizing Com., Local 777,* 398 F.2d 735 (7th Cir.1968), *cert. denied,* 393 U.S. 1015, 89 S.Ct. 619, 21 L.Ed.2d 561 (1969); *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Union correctly points out that the rule has its genesis in the Labor Management Relations Act, 29 U.S.C.A. § 185(a), wherein the Congress expressed a policy favoring the settlement of labor disputes by the parties by employing the process of arbitration in order to further the goals of industrial self-government.

The crux of the *Steelworkers' Trilogy,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960), evinces a strong and positive recognition, to be sure, that the Congress intended that the parties to a labor dispute would fully resort to the processes of labor-management arbitration, free from judicial encroachment, in order to render it a workable alternative to the use of the picket line. S.Rep.No.105, 80th Cong., 1st Sess. 17–18 (1947) set forth, *inter alia,* this goal in the enactment of § 185(a), *supra:* ". . . recognition of the collective [bargaining] agreement as a valid, binding and enforceable contract . . . [as] . . . a logical and necessary step. It will promote a higher degree of responsibility upon the parties to such agreements, and will therefore promote industrial peace." In *Textile Workers v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) the Supreme Court lent support to the Congressional intent above recited in holding that § 185(a), *supra,* expresses a federal policy that federal courts should enforce arbitration agreements in recognition that an agreement to arbitrate is a "quid pro quo" for a no-strike agreement.

Union places great reliance on *Carey v. Westinghouse Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964). The Supreme Court there held that when there is a dispute between the employer and two unions with regard to work assignments of certain employees of the respective unions that this constitutes a "jurisdictional" dispute; that § 10(k) of the NLRA, 29 U.S.C.A. § 160(k), was enacted to encourage and foster voluntary adjustments of such disputes; and that grievance arbitration is one method of settling disputes over work assignments. This Court, too, has recognized that an arbitrator's award will be enforced if "it draws its essence from the collective bargaining agreement." *Campo Machining Co., Inc. v. Local Lodge No. 1926, etc.,* 536 F.2d 330 (10th Cir.1976). Constructors takes no exception to Union's interpretation of the general rules laid down in the above and other cited decisions. Constructors agrees with the proposition that settlement of disputes by agreement between the parties is the favored policy *and that an award made by an arbitrator chosen by the parties to a collective bargaining agreement is not subject to judicial review if the arbitrator's authority to act is firmly drawn from the collective bargaining agreement. Constructors contends, however, that the instant case does not involve the question of whether the dispute is arbitrable, but only the issue of the choice of the arbitrator agreed upon by the parties before the dispute arose,* relying upon *Wood, Wire & Metal Lathers International Union v. Dunlop,* 127 U.S.App.D.C. 227, 382 F.2d 176 (1967), *cert. denied,* 389 U.S. 971, 88 S.Ct. 467, 19 L.Ed.2d 462 (1967); *Columbia Broadcasting System, Inc. v. American Recording & Broadcasting Association,* 414 F.2d 1326 (2d Cir.1969); *Local Union No. 1423, Glaziers, etc., v. PPG Industries, Inc.,* 378 F.Supp. 991 (N.D.Ind.1974).

In *Wood, supra,* the issue in dispute involved the proper hearing panel or forum agreed upon by the parties under a "Plan for Settling Jurisdictional Disputes Nationally and Locally" entered into between the Building and Construction Trades Department, a federation of labor organizations

including the two unions here involved and the various employers' associations in the building and construction industry. The dispute required an interpretation of the Plan, i.e., whether the joint board acted within the scope of its authority in rendering a "national decision" as authorized by the collective bargaining agreement.

In *Columbia Broadcasting, supra,* the court recognized the broad scope of a collective bargaining agreement. It favorably quoted this language from *Transportation-Communication Employees Union v. Union Pacific Railroad Co.,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966), *rehearing denied,* 385 U.S. 1032, 87 S.Ct. 737, 17 L.Ed.2d 680 (1967).

. . . it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments.

385 U.S., at 161, 87 S.Ct., at 371.

We do not believe that Union has enlightened this Court with specific and entire references to the collective bargaining agreements in force and effect between Union and Constructors bearing upon the dispute involved here. We, however, have examined the agreements and supporting documents. We believe the following provisions are important to the resolution of the issues presented:

Agreements, national in scope between Sheet Metal Workers International Association and other international unions, covering work jurisdiction and the assignment, allocation and division of work among employees represented for the purposes of collective bargaining by such labor organizations, shall be respected and applied by the employer, provided such agreements have been consummated with the knowledge of and without objection from Sheet Metal and Air Conditioning Contractors National Association, Inc. [Stipulation of Facts, Exhibit A, p. 10, Exhibit B, p. 17.]

The identical language above quoted was construed in *Local 416 Sheet Metal Workers International Association v. Helgesteel Corp.,* 507 F.2d 1053 (7th Cir.1974). There both the Sheet Metal Workers (Union here) and Ironworkers claimed the right to perform the work of erecting the sheet metal walls and roof of pre-engineered steel buildings being built by the contractor. The erection of the framework of the building was done by the Ironworkers. The employer was required by his contract with the Sheet Metal Workers to allocate to them the erection of the walls and roof. After the employer violated this contract and awarded all of the work to the Ironworkers, the Sheet Metal Workers filed a grievance with a local Sheet Metal Workers Board. The Board awarded damages for violation of the collective bargaining agreement. The Sheet Metal Workers filed a suit to enforce the award. The Ironworkers then invoked arbitration upon the employer to require him to assign the work to them. Appeal was taken from the order of the district court enforcing the award of the Sheet Metal Workers Board and granting summary judgment to the Sheet Metal Workers and the employer on the complaint of the Ironworkers seeking to compel submission of the entire controversy to the Jurisdictional Disputes Board. Just as in the instant case, the collective bargaining agreement of the Sheet Metal Workers contained language requiring the employer to "respect and apply" national agreements regarding work allocation. In granting summary judgment against the Ironworkers' attempt to have the case referred to the Jurisdictional Disputes Board, the district court stated that it was reluctant to infer that the Sheet Metal Workers and the employer had rejected arbitration because of the strong Congressional policy favoring this method of dispute resolution. The summary judgment was reversed by the appellate court which held that the only issue on appeal was whether the Constitution of the Building and Trades Department of the AFL-CIO which required submission of jurisdictional disputes to the Jurisdictional Disputes Board applied to the

Sheet Metal Workers and the employers. The Circuit Court resolved *that it must take cognizance of agreements referred to by the collective bargaining agreement, related collective bargaining agreements and the custom and practice in the trade; that it could not ignore the existence of the AFL-CIO Constitution; and that the forum created by that Constitution was to provide a method of dispute resolution by which all the parties could be bound.* The court refused to enforce the arbitration award because it dealt only with part of the dispute and with fewer than all of the parties to the dispute ·before it. Significantly, the court observed that it could not disregard the AFL-CIO Constitution and the collective bargaining agreement between Sheet Metal Workers and the employer which imposed the forum created by that Constitution on the parties.

The *Helgesteel* court stated that in order to determine what the parties had agreed upon relative to a forum for resolution of the dispute required *an examination and interpretation of agreements other than and in addition to the collective bargaining agreement because the collective bargaining agreement language itself required this excursion.* We agree. That rationale applies here. We believe that the collective bargaining agreement between Union and Constructors in the instant case involves similar if not identical provisions and language to that in *Helgesteel.* The competing unions and the basic dispute are similar. *Helgesteel, supra,* is persuasive authority for the need to examine and interpret all pertinent agreements between Union, Ironworkers and Constructors in order to decide which forum was agreed upon, and, accordingly, which forum had jurisdiction to act. *See also: Sheet Metal Workers' International Union v. Aetna Steel Products Corporation,* 359 F.2d 1 (1st Cir.1966), *cert. denied,* 385 U.S. 839, 87 S.Ct. 86, 17 L.Ed.2d 72 (1966).

The parties have stipulated that Union and Ironworkers are bound by the Constitution adopted by the Building and Trades Department, AFL-CIO, and that Union, Ironworkers and Constructors are bound by the Impartial Jurisdictional Disputes Board Plan.

*National Labor Relations Board v. Radio and Television Broadcast Engineers Union, Local 1212, etc.,* 364 U.S. 573, 81 S.Ct. 330, 5 L.Ed.2d 302 (1961) lends much credence, we believe, to our reliance upon the broad scope of inquiry required by *Helgesteel, supra,* in determining the proper forum for the settlement of work assignment disputes. That case involved a "jurisdictional dispute" over work assignments between one union composed of television "technicians" and another union composed of "stage employees." The employer, Columbia Broadcasting System, had collective bargaining agreements with both unions. The agreements, however, did not clearly apportion the work of providing lighting for television shows between employees of the two unions. This led to constant disputes. Columbia, in an effort to resolve the dispute, divided the work equally between the two unions. Work stoppages were forced upon Columbia whenever a particular assignment of work was made in favor of the other union. Columbia finally filed an unfair labor practice charge with the NLRB. The court pointed to § 10(k) of the Taft-Hartley Act, 29 U.S.C.A. § 160(k) which offers strong inducements to the parties to voluntarily adjust and settle jurisdictional disputes. In view of the failure in this regard, the court held that the NLRB was obligated under § 10(k) to "determine the dispute" and to render an affirmative award of the work between the employees of the competing unions. Significantly, the court directed the NLRB, in resolving the jurisdictional dispute, to "do something more than merely look at . . . a collective bargaining contract to determine whether one or the other union has a clearly defined statutory or contractual right to have the employees it represents perform certain work tasks." 364 U.S., at 579, 81 S.Ct., at 334.

Although a National Joint Board for the Settlement of Jurisdictional Disputes (now IJDB) in the Construction Industry existed prior to 1965, the NLRB did not accord

great weight to its decisions in awarding work assignments between competing unions, unless both the unions and the employer were bound. In 1965, however, when the National Joint Board was reconstituted via a new agreement adding "efficiency" and "economy of operation" to the determination of work assignment disputes, the NLRB gave controlling weight to awards made by IJDB, notwithstanding the fact that the unions were bound thereby but the employer was not. *Don Cartage Co.,* 160 N.L.R.B. 1061 (1966).

Before reviewing relevant provisions of agreements we believe to be binding upon *all of the parties* in the instant dispute, we deem it significant to not that the NLRB defers to rulings of the IJDB or arbitrators in proceedings where all of the parties are bound and (1) the dispute arises within the confines of a collective bargaining relationship and there is no claim of enmity between the parties, (2) the parties are willing to resort to arbitration, and (3) *the contract and its meaning lie at the center of the dispute.* *Collyer Insulated Wire,* 192 N.L.R.B. 837 (1971).

Article X of the Constitution of the Building & Construction Trades Department, AFL-CIO provides:

> Jurisdictional Disputes.
>
> All jurisdictional disputes between or among affiliated national or international unions and their affiliated local unions and employers shall be settled and adjusted according to the present plan established by the Building & Construction Trades Department, or any other plan or method of procedure adopted in the future by the department for the settlement of jurisdictional disputes. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the Department and upon all affiliated national or international unions and their affiliated local unions.
>
> [R. Vol. I, p. 32]

We hold, as did the *Helgesteel* court, that Article X was binding upon each of the parties hereto through the collective bargaining agreements. Accordingly, we agree with the trial court finding and/or conclusion that "the present plan" is in fact that of the IJDB, and that IJDB is the forum before whom the jurisdictional dispute involved here, i.e., relating to the work assignment, is to be "settled and adjusted."

A separate agreement, binding on all parties independent of their affiliation with the Building & Construction Trades Department, is the "Plan for Settling Jurisdictional Disputes Nationally and Locally" dated April 3, 1970, and succeeded under date of June 1, 1973. Both Union and Ironworkers through their Internationals and Constructors through its contractors' associations have signed and are bound by the National Joint Board Plan itself. [R. 33, Stipulation of Facts, ¶ 5, as amended.]

The language of the plan provides that it shall be the forum for the resolution of *all jurisdictional disputes* among signatories. [R. Vol. I, p. 32, Stipulation of Facts, Exhibit F, p. 16.] It allows for the use of local plans for the settlement of jurisdictional disputes but only where such plans are "recognized by the department." Direct appeal from such local board decisions may be taken to the appeals board section of the IJDB. [R. Vol. I, p. 32, Stipulation of Facts, Exhibit D, Article 4, Section 1, p. 11; Exhibit F, Article 9, p. 19.] The Plan also significantly states:

> It shall be a violation of this agreement for any local union, international union, employer or employer's associate to enter into any agreement, resolution or stipulation that attempts to establish any jurisdiction which deviates from the spirit and intent of the agreement . . . [Exhibit D, Article 3, Section 9, p. 11; Exhibit F, Article 7, Section 5, p. 14.]

We hold that the district court did not err in its finding that IJDB is the exclusive forum agreed upon by the parties involved in the instant dispute and to which they must turn for a final and binding determination. IJDB unlike the Union board and/or boards established under the collective bargaining agreement between Union and Constructors (NJAB), can consider the

respective collective bargaining agreements and the additional agreement above referred to because it has all of the interested parties before it. A broad scope of inquiry and interpretative review permits IJDB to pass judgment based upon guidance from sources far beyond the confines of a primary collective bargaining agreement.

## II.

■ Union contends that while it is admitted that any one of the three parties to the jurisdictional dispute could have submitted the matter to the IJDB, none of the parties elected to take such action until after the fact and after Union had obtained a favorable decision from the National Joint Adjustment Board. Union also asserts that Constructors having elected not to pursue the matter to the IJDB cannot now complain that the matter should have been submitted to that Board at the inception of the dispute.

This record evidences that Constructors at all times—from the outset of the work-assignment dispute and at all times thereafter—took the position that IJDB alone had power and authority to decide the controversy between the three parties. [*See:* R. Vol. I, pp. 26–27, Stipulation of Facts, Nos. 15–17.]

To contend, as Union implies, that Constructors stood "idly by" and did not complain until after Union had obtained the award or otherwise challenged the jurisdiction of NJAB, is simply not borne out by the record. Furthermore, by reason of Constructors' refusal to recognize NJAB, whose jurisdiction vests exclusively within the four corners of the collective bargaining agreement between Union and Constructors, the issue of proper forum was preserved by Constructors. The parties bound themselves, as previously related, to use of IJDB for the settlement of the dispute here involving the work-assignment between Union and Ironworkers. No party may seek resolution in another forum. The choice of forum has been contractually determined by the parties to vest in IJDB.

No waiver is to be attributed to Constructors.

Finally, even though we are in full accord with the trial court's findings and order, we observe that on appellate review, findings of the fact-finder are to accepted unless held to be "clearly erroneous." *Commissioner of Internal Revenue v. Duberstein,* 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960); Fed.R.Civ.P., rule 52(a), 28 U.S.C.A. And when a trial court makes a choice between two permissible views of the evidence (even when based upon stipulation), such choice is not then "clearly erroneous." *United States v. Yellow Cab Company,* 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949); *Kiner v. Northcutt,* 424 F.2d 222 (10th Cir. 1970).

WE AFFIRM.