United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

**No. 22-7109**                           **September Term, 2022**
FILED ON: JUNE 22, 2023

UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING
INDUSTRY OF THE UNITED STATES AND CANADA,
              APPELLANT

v.

GEMMA POWER SYSTEMS, LLC,
              APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-00922)

———

Before: CHILDS and PAN, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

**J U D G M E N T**

This case was considered on the record from the United States District Court for the District of Columbia and the briefs and oral argument of the parties. The Court has accorded the issues full consideration and determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is:

**ORDERED** that the order of the district court, entered on July 15, 2022, be **AFFIRMED**.

\*   \*   \*

Gemma Power Systems, LLC ("Gemma") is the primary contractor to build a turbine-driven electric power station in Guernsey County, Ohio (the "Guernsey Project"). Gemma attempted to negotiate collective-bargaining agreements, which it calls "Job Compliance Understandings" ("JCUs"), with three unions: (1) the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL–CIO (the "Boilermakers"); (2) the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers, AFL–CIO (the "Iron Workers"); and (3) the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada, AFL–CIO (the "United Association"). The Boilermakers and Iron Workers entered nearly identical JCUs with Gemma,

1

but the United Association refused to agree to the terms.

One of Gemma's work assignments required the installation of pipework around a steam-generator unit. After the United Association rejected Gemma's proposed JCU, Gemma assigned this work to the Boilermakers and Iron Workers. To protest its exclusion, the United Association initiated arbitration proceedings against Gemma, the Boilermakers, and the Iron Workers, under the Plan for the Settlement of Jurisdictional Disputes in the Construction Industry (the "Plan").

The Plan is a "long recognized" arbitration mechanism for resolving jurisdictional disputes within the construction industry. *United Bhd. of Carpenters v. Operative Plasterers' & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 685 (D.C. Cir. 2013). An employer or union is bound by the Plan if it: (1) is a member of an association that has agreed to be governed by the Plan; (2) directly signs a binding form indicating its consent to participation in the Plan; or (3) enters a collective-bargaining agreement which provides that the Plan will apply. *See* Plan art. II, § 1, J.A. 102. An employer that is bound by the Plan stipulates "that all cases, disputes or controversies involving jurisdictional disputes or assignments of work arising under [the Plan] shall be resolved as provided" by the Plan, and agrees to comply with decisions by Plan arbitrators. Plan art. IX, § 1, J.A. 117. Under the Plan, "[a]ny decision or interpretation rendered by an arbitrator shall be immediately accepted and complied with by all parties subject to [the Plan]." Plan art. VII, § 2, J.A. 115; *see also* Plan art. V, § 7, J.A. 109 (providing that Plan arbitrators' decisions "shall be final and binding on all parties to the dispute").

When the United Association sought to arbitrate its exclusion from the pipework assignment, Gemma refused to participate in the arbitration, contending that the Plan arbitrator lacked authority to adjudicate that jurisdictional dispute. The arbitration proceeded with the United Association, the Boilermakers, and the Iron Workers as parties. The Plan arbitrator concluded that all entities — including Gemma — had stipulated to the Plan, but that the United Association had relinquished its claim to work on the Guernsey Project by refusing to sign the JCU that Gemma offered. But the Plan's appeals board vacated the arbitrator's decision, necessitating a second arbitration. The second arbitrator also concluded that Gemma had stipulated to the Plan, determined that the United Association was entitled to do the disputed pipework, and ordered Gemma to assign the work to the United Association.

Gemma refused to comply with the arbitrator's decision. Instead, Gemma shifted the disputed work from the Boilermakers and Iron Workers to non-union workers. The United Association filed a petition in the district court under § 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a), to confirm the arbitration award, which would have the effect of requiring Gemma to assign the pipework to the United Association. Gemma moved to dismiss the petition, and the United Association cross-moved for summary judgment. The district court granted Gemma's motion to dismiss, denied the United Association's cross-motion for summary judgment, and vacated the arbitral award. The United Association appealed.

When assessing a district court's order confirming or vacating an arbitral award, we review findings of fact for clear error and questions of law *de novo*. *LaPrade v. Kidder, Peabody & Co.*, 246 F.3d 702, 706 (D.C. Cir. 2001). We interpret collective-bargaining agreements "according to

2

ordinary principles of contract law." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015). Contract interpretation begins with the plain meaning of the contract's text. *Bode & Grenier, LLP v. Knight*, 808 F.3d 852, 862 (D.C. Cir. 2015). "In this endeavor, as with any other contract, the parties' intentions control." *M&G Polymers*, 574 U.S. at 435 (quoting *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682 (2010)). If "the parties' intent 'can be determined from the face of the agreement'" because its words are "clear and unambiguous," then a court's inquiry ends with the text. *CITGO Asphalt Refin. Co. v. Frescati Shipping Co.*, 140 S. Ct. 1081, 1088 (2020) (first quoting 11 Richard A. Lord, Williston on Contracts § 30:6 (4th ed. 2012); then quoting *M&G Polymers*, 574 U.S. at 435). A court must read a contract "as a whole, with meaning given to every provision contained therein." *KiSKA Constr. Corp., U.S.A. v. Wash. Metro. Area Transit Auth.*, 321 F.3d 1151, 1163 (D.C. Cir. 2003).

The collective-bargaining agreements at issue are Gemma's JCUs with the Boilermakers and Iron Workers. Notably, the JCUs do not require Gemma to be bound by the Plan, but they do provide that the signatory unions will abide by the Plan in any disputes with other Guernsey Project-affiliated unions that are bound by the Plan: "All jurisdictional disputes between or among the [signatory union] and other unions who have signed agreements with [Gemma] or any subcontractor governing the performance of work on the [Guernsey] Project, and who have agreed to be bound to the procedures provided in the Plan . . . , shall be settled and adjusted" according to the Plan. J.A. 40, 50. The JCUs further state that work assignments "shall be followed until the dispute is resolved in accordance with the Plan," and "[d]ecisions rendered under the Plan shall be final and binding and conclusive on the [signatory union] or other affected unions." *Id.*

The JCUs contain several provisions that protect Gemma's interest in managing work assignments on the Guernsey Project. The JCUs state that they are "not an express or implied guarantee" that union employees will perform work on the Guernsey Project; and that the agreements "exclude[] work subcontracted by [Gemma] to others or self-performed by [Gemma] using labor procured from sources other than the [signatory union] ('Other Sourced Labor'), including but not limited to work within the work jurisdiction of the [signatory union]." J.A. 33, 43. Moreover, nothing within the JCUs "shall affect the right of [Gemma] to determine the work jurisdiction of Other Source Labor who are not represented by a [signatory union], and the Plan shall not be empowered to affect work assignments of such Other Source Labor." J.A. 40, 50. Gemma "retains the sole right to control and assign the jurisdictional duties for all work." *Id.*

According to the United Association, Gemma implicitly agreed to be bound by the Plan arbitration in the pipework dispute because Gemma entered the JCUs, which specify that the Plan will govern all jurisdictional disputes between a signatory union — *i.e.*, the Boilermakers or Iron Workers — and "other unions who have signed agreements with . . . any subcontractor." *See* Opening Br. 41; Reply Br. 2. Gemma concedes that the United Association could initiate arbitration with the signatory unions, as Gemma has engaged United Association-affiliated subcontractors to work elsewhere on the Guernsey Project. *See* Gemma Br. 20; Gemma Mem. in Supp. of Mot. to Dismiss 7 n.3, ECF No. 11-1; J.A. 136. But the United Association claims that Gemma's use of United Association-affiliated subcontractors also binds Gemma to arbitrate with the United Association. In its view, even though these JCU provisions "reference only the unions,"

3

they "clearly contemplate Gemma being bound to the Plan's resolution of the dispute." Opening Br. 31. Because the Plan generally requires that employers comply with Plan arbitrators' decisions, *see* Plan art. IX, § 1, J.A. 117, the United Association argues that Gemma had no right to flout the arbitrator's order.

We do not agree with the United Association's reading of the JCUs. Critically, the JCUs' plain text does not reveal any intent by Gemma to be bound by Plan arbitration of work-assignment disputes. The JCUs provide that disputes between or among unions are subject to Plan arbitration, but that the resulting arbitration is binding only on the unions. *See* J.A. 40, 50 ("Decisions rendered under the Plan shall be final and binding and conclusive on the [signatory union] or other affected unions."). The JCUs' jurisdictional-dispute provisions do not even mention Gemma. To the extent that Plan arbitrators' decisions generally are binding on "all parties to [a] dispute," *see* Plan art. V, § 7, J.A. 108–09, Gemma was not a party to the dispute among the unions that was arbitrated. To avoid the plain meaning of the JCUs' text, the United Association essentially argues that Gemma's intent to be bound by the Plan may be inferred. Notably, however, other methods by which an employer may stipulate to the Plan involve explicit acquiescence to the Plan's terms and procedures. *See* Plan art. II, § 1(a), J.A. 102. The Plan's stipulation form, for example, states that an employer "agrees to be bound by all the terms and provisions" of the Plan. J.A. 100. The cases that the United Association cites to support its reading are inapposite: They involve employers who consented to arbitration through collective-bargaining agreements with disputing unions,[1] who agreed to be bound by initiating the arbitration,[2] or who were bound by membership in an external organization.[3] *See* Opening Br. 37–39; Reply Br. 17–18.

The United Association and the Plan itself, as amicus, suggest that Gemma must be bound "to abide by the resolution of . . . disputes" submitted to the Plan in order for the Plan to have a meaningful function. *See* Opening Br. 44; Amicus Br. 12 ("[T]he Plan's effectiveness in ensuring labor stability is dependent" on unions and employers "complying with the Plan's determinations, regardless of outcome."). The Plan, however, is effective under the JCUs. As the district court properly found, when the arbitrator determined that the United Association was entitled to do the disputed pipework, neither the Boilermakers nor the Iron Workers could defy that "final and

---

[1] *See Sheet Metal Workers Int'l Ass'n, Loc. Union #49 v. Los Alamos Constructors, Inc.*, 550 F.2d 1258, 1259 (10th Cir. 1977) ("Union, Ironworkers, and Constructors were signatories to and bound by the substantive and procedural rules adopted by the Jurisdictional Disputes Board."); *Loc. 416, Sheet Metal Workers Int'l Ass'n v. Helgesteel Corp.*, 507 F.2d 1053, 1056–57 (7th Cir. 1974) (holding, where a collective-bargaining provision stated that "[a]greements, national in scope, between [the union] and other international unions, covering work jurisdiction and the assignment, allocation and division of work . . . shall be respected and applied by the [e]mployer," that a "jurisdictional dispute should have been submitted to the national joint board"); *Laborers Int'l Union, Loc. Union No. 1440 v. Great Lakes Constr. Corp.*, 484 F. Supp. 1300, 1302 (E.D. Wis. 1980) ("[T]he [employer] has expressly undertaken in its collective bargaining agreement with the plaintiff to recognize 'any jurisdictional awards' made in favor of the plaintiff by the [arbitration board].").

[2] *See ACMAT Corp. v. Int'l Union of Operating Eng'rs*, 442 F. Supp. 772, 776, 784–85 (D. Conn. 1977) (holding that an employer "explicitly agreed to be bound [by an arbitral decision] when it submitted the [jurisdictional] dispute" to arbitration and sent a letter stating that the employer "will abide by the decision" of the arbitrator).

[3] *See Drywall Tapers & Pointers of Greater N.Y., Loc. Union Loc. 1974 v. Bovis Lend Lease Interiors, Inc.*, No. 05 CV 2746, 2005 WL 2205836, at *9–11 (E.D.N.Y. Sept. 9, 2005) (observing that a disputing union contended that the employer "agreed to be bound" by a similar plan through membership in a contractors' association, not through a collective-bargaining agreement).

4

binding and conclusive" determination by continuing with the assignment. *See* J.A. 40, 50. Under the JCUs, Gemma was required to reassign the work when the Plan arbitrator ordered the signatory unions to relinquish their assignments, because the signatory unions were bound by that judgment. But that was the full extent of Gemma's obligation to comply with the outcome of the Plan arbitration. The arbitrator overstepped when he ordered Gemma to reassign the disputed work to the United Association. Under the JCUs, Gemma retained the capacity to determine to whom it would reassign work, and it acted within its rights when it hired non-union employees to do the pipework in question. *See* J.A. 40, 50 ("Nothing [within the JCUs] shall affect the right of [Gemma] to determine the work jurisdiction of Other Source Labor who are not represented by a [signatory union], and the Plan shall not be empowered to affect work assignments of such Other Source Labor. [Gemma] retains the sole right to control and assign the jurisdictional duties for all work[.]"). Thus, the Plan arbitrator exceeded the bounds of his jurisdiction when he ordered Gemma to assign the disputed pipework to the United Association, and that order is not enforceable. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648–49 (1986) ("'[A] party cannot be required to submit to arbitration any dispute which [it] has not agreed so to submit' . . . . [because] arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960))); *Nw. Airlines, Inc. v. Air Line Pilots Ass'n*, 808 F.2d 76, 78 (D.C. Cir. 1987).

We note that interpreting the JCUs to bind Gemma to the Plan in this instance would be inconsistent with other contract terms. First, Gemma retained the rights "to determine the work jurisdiction of Other Source Labor" and "to control and assign the jurisdictional duties for all work." J.A. 40, 50. If the JCUs also authorized a Plan arbitrator to make work assignments, Gemma's retained rights would be meaningless. Similarly, the JCUs "exclude[] work . . . self-performed by [Gemma] . . . including but not limited to work within the work jurisdiction of the [signatory unions]." J.A. 33, 43. Those exclusions would matter little if a union could ask a Plan arbitrator to order Gemma to assign all work within the union's jurisdiction to the union. And finally, the JCUs state that "[a]ll disputes over the meaning of, and the rights and obligations contained" within the JCUs must be arbitrated by the American Arbitration Association. J.A. 37–38, 47–49. Allowing a Plan arbitrator to determine Gemma's obligations under the JCUs would be inconsistent with that arbitration clause. *See* Mem. Op. 9. Thus, the United Association's interpretation of the JCUs asks us to ignore our duty to give meaning to every provision of a contract. *See KiSKA Constr. Corp.*, 321 F.3d at 1163.

Finally, because the JCUs' plain text resolves this inquiry, we reject the United Association's assertion that we should apply the "traditional presumption of arbitrability." Opening Br. 38. The presumption of arbitrability applies "only where a validly formed and enforceable arbitration agreement is ambiguous about whether it covers the dispute at hand." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010). The JCUs' plain text is unambiguous: Gemma did not intend to be bound by Plan arbitrators' decisions, meaning that it did not agree to participate in Plan arbitration. We therefore conclude that there is no basis to apply the presumption of arbitrability.

\* \* \*

5

For the foregoing reasons, the district court's order is **AFFIRMED**.  Pursuant to D.C. Circuit Rule 36, this disposition will not be published.  The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc*.  *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41(a)(1).

### Per Curiam

**FOR THE COURT:**
Mark J. Langer, Clerk

BY:  /s/
Daniel J. Reidy
Deputy Clerk