**METAL PRODUCTS WORKERS UNION, LOCAL 1645, UAW–AFL–CIO,** Petitioner-Appellant,

v.

**The TORRINGTON COMPANY,** Respondent-Appellee.

**No. 281, Docket 29865.**

United States Court of Appeals Second Circuit.

Argued Jan. 27, 1966.

Decided April 4, 1966.

Jerome S. Rubenstein, New York City (Rubenstein & Rubenstein, New York City, on the brief), for appellant.

Jay S. Siegel, Hartford, Conn. (William J. Larkin, 2d, Waterbury, Conn., and C. E. Harwood, Torrington, Conn., on the brief), for appellee.

Before FRIENDLY and HAYS, Circuit Judges, and BLUMENFELD, District Judge.*

HAYS, Circuit Judge.

The petitioner-appellant, Metal Products Workers Union, moved under § 10 of the United States Arbitration Act, 9 U.S.C. § 10, and § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a), for an order vacating an arbitration award. The district court granted a motion by the appellee, The Torrington Company, for summary judgment. We affirm.

The present controversy arises out of a sixteen week strike at The Torrington Company's plant. On January 18, 1964, the Union and Company entered into a collective bargaining agreement and terminated the strike. At that time there were approximateily 2000 employees on strike. One of the problems facing the parties, in their task of restoring the plant to its normal operation, was the establishment of an order of recall for employees.

There was a sharp disagreement between the parties as to the existence and, if it existed, the character of an understanding of the subject of recall.

The Union claims that the Company accepted its proposal that the procedures provided by the new collective bargaining agreement for recall from lay-off be applied to the return of strikers, or its alternative proposal that the Company permit all strikers to return to work and then lay off the unneeded employees in accordance with the seniority provisions of the collective bargaining agreement. The Company claims that it rejected both of these proposals. The Company maintains that the Union agreed that the Company was to be left free to recall workers in accordance with production requirements.[1] The Union denies that there was such an agreement.

On January 20, 1964, the Union filed a grievance alleging that the Company violated the new agreement by failing to recall, in accordance with the seniority provisions of that agreement, Michael Chiarito, an employee who had been on strike. The parties followed the contractual procedure for the adjustment of grievances, but failed to resolve the controversy in the course of that procedure.

The Union demanded arbitration. The Company asserted that it was under no duty to arbitrate controversies over the recall of strikers.

The issue to be resolved between the parties was therefore one of arbitrability. The Union claimed that, in connection with the agreement to follow the provisions of the new contract in recalling strikers, the Company also impliedly agreed to submit to the provisions of that agreement with respect to arbitration.[2] The Company denied that there

---

* Of the District Court for Connecticut, sitting by designation.

1. The Company stated that it intended to recall as many employees as possible, as fast as possible, and that where feasible its general policy would be to recall on a plant seniority basis and then assign the employees to jobs on the basis of job requirements and employee qualifications. "In accordance with this understanding," the arbitrator found "the Company returned almost 2000 employees to work."

2. The arbitration clause, Article V, of the agreement reads in relevant part:
"Section 1.
If a grievance is not settled after it has been processed through the three (3) steps described in Article IV above, *and if it is a grievance with respect to the interpretation or application of any provisions in this contract* and is not controlled by Section 1 of Article XIV, (Management) it may be submitted to arbitration in the manner herein provided.
*    *    *    *    *    *
Section 3.
The arbitrator shall be bound by and must comply with all of the terms of this agreement and he shall have no power to add to, delete from, or modify, in any way, any of the provisions of this agreement. * * *
Section 4.
The decision of the arbitrator shall be binding on both parties during the life of this agreement unless the same is

was any agreement to submit questions arising out of the recall of strikers to arbitration.

■■ The first question the parties faced was the question of what tribunal was to resolve the issue of arbitrability. Ordinarily arbitrability is to be decided by the courts. See Atkinson v. Sinclair Refining Co., 370 U.S. 238, 241, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962); United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); Torrington Co. v. Metal Products Workers Union, 347 F.2d 93 (2d Cir.), cert. denied, 382 U.S. 940, 86 S.Ct. 394, 15 L.Ed.2d 351 (1965). However, "the parties may voluntarily submit arbitrability to an arbitrator." Torrington Co. v. Metal Products Workers Union, supra at 95. The only limitation is that there must be "a clear demonstration" of the purpose to have an arbitrator decide arbitrability. United Steelworkers of America v. Warrior & Gulf Nav. Co., supra, 363 U.S. at 583 n. 7, 80 S.Ct. 1347.

In the present case the parties decided that arbitrability should be determined by an arbitrator. They clearly demonstrated that purpose by entering into an agreement on the appointment of an arbitrator and on the following submission:

*"The Arbitrator is to rule on the issue of 'Arbitrability'. If the Arbitrator should Rule that the matter is not arbitrable, then the Ruling will be issued as a final Award. If the Arbitrator shall Rule that the matter is arbitrable, then his Ruling will be a Preliminary Ruling and further hearing shall be scheduled on the merits."* (Emphasis added.)

The arbitrator chosen by the parties proceeded to hear the dispute. After consideration of the rival contentions he issued his findings and award. His award reads:

"Under the facts of this case there is no Contract clause to interpret or apply and, therefore, the matter is not arbitrable."

No objection is raised to the procedure of the arbitration nor to the conduct of the arbitrator. The arbitrator's findings indicate that he fully reviewed the arguments of the parties and the evidence, including the history of negotiations.[3]

---

contrary, in any way, to law." (Emphasis added.)

3. The "Arbitrator's Findings" were as follows:

"After reviewing and considering the evidence presented and the arguments of the parties, I find as follows:

1. The parties, by their understanding and by the practice followed in returning almost 2000 employees since the strike, departed from the recall-after-layoff provisions of the Contract.

2. That the seniority provisions were not to govern the return of employees was made known to the Union on January 18, 1964 when the Union's suggestions for applying the recall provisions were rejected by the Company.

3. *The Contract has no specific provisions establishing the procedure for returning workers after a strike.* Considering this fact along with 1 and 2 above, there is no Contract provision to arbitrate.

4. The recall provisions, based on job seniority, refer to recall after layoff or transfer in lieu of layoff.

5. The parties did not provide in their settlement provisions that the recall provisions under layoff conditions were to govern returning employees to work after the strike.

6. The arbitrator may not by his decision in effect write such a clause into the Contract. Under Article V, 3, the arbitrator 'shall have no power to add to * * * the provisions of this Agreement.'

7. The history of negotiations on this matter, the rejection of the Union's suggestions that the seniority provisions of the Contract be followed, the understanding reached, and the practice followed, add up to the conclusion that the seniority provisions of the Contract were specifically not to govern the return to work of the strikers. *For the purpose of this case, therefore, there is no Contract clause, the application or interpretation of which is arbitrable."* (Emphasis added.)

■ We find no ground for reversing the decision of the arbitrator. The parties voluntarily and by express agreement submitted to him the very issue which he has decided, the issue of arbitrability. The Union is unhappy with the award because the arbitrator failed to find in its favor. It wants an opportunity to present its case again to another tribunal. We can perceive no reason for giving it this second opportunity, since there is no basis for finding error either in the arbitrator's conclusions or in the procedure by which he reached those conclusions.

The Union argues that "the policy of the national labor laws requires that grievances like the one involved in the present litigation be subject to arbitration upon the merits."

■ "[W]hen public policy is sought to be interposed as a bar to enforcement of [or as a reason to vacate] an arbitration award, a court must evaluate its asserted content." Local 453, International Union of Elec., Radio & Mach. Workers, etc. v. Otis Elevator Co., 314 F.2d 25, 29 (2d Cir.), cert. denied, 373 U.S. 949, 83 S.Ct. 1680, 10 L.Ed.2d 705 (1963). There is no policy which favors forcing a party to arbitrate when he has not agreed to do so.

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed. 2d 1409 (1960).

"[J]ust as an employer has no obligation to arbitrate issues which it has not agreed to arbitrate, so *a fortiori,* it cannot be compelled to arbitrate if an arbitration clause does not bind it at all." John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 547, 84 S.Ct. 909, 913, 11 L.Ed.2d 898 (1964). See Torrington Co. v. Metal Products Workers Union, supra; Proctor & Gamble Independent Union of Port Ivory, N. Y. v. Proctor & Gamble Mfg. Co., 312 F.2d 181, 184 (2d Cir. 1962), cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed. 2d 1053 (1963).

■ The Union also argues that the existence of a "genuine issue as to material fact should preclude the grant of summary judgment to the Company." Taken in its best light, the Union's claim is that there is some special agreement between the parties making the arbitration clause applicable or that there is some custom or common understanding which has that effect. In Torrington Co. v. Metal Products Workers Union, supra, 347 F.2d at 95, in reversing a summary judgment for the Union, we held that there were "disputed issues of fact and that summary judgment is therefore inappropriate." But here, the arbitrator, in the exercise of the power conferred upon him by the agreement of the parties, has resolved all issues of fact and construction.

The Union also claims that the arbitrator's award must be vacated under § 10 of the United States Arbitration Act, 9 U.S.C. § 10. Even if § 10 were applicable,[4] a review upon the grounds enumerated in the statute would not alter the result which we have reached.

Affirmed.

BLUMENFELD, District Judge.
I concur in the result.

4. See Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957) and id. 466 (dissenting opinion).