**LABORERS LOCAL 91, LABORERS INTERNATIONAL UNION OF NORTH AMERICA, AFL–CIO, Plaintiff,**

v.

**BUILDING INDUSTRY EMPLOYERS ASSOCIATION OF NIAGARA COUNTY, NEW YORK, INC.; and Higgins Erectors & Haulers, Inc.; and Local 9, International Association of Bridge, Structural and Ornamental Iron Workers, Defendants.**

No. CIV–80–654E.

United States District Court,
W.D. New York.

Feb. 23, 1983.

Richard Lipsitz, Buffalo, N.Y., for plaintiff.

Jeremy Cohen, Buffalo, N.Y., Angelo Massaro, Niagara Falls, N.Y., W. James Schwan, Buffalo, N.Y., for defendants.

ELFVIN, District Judge.

By its original Complaint plaintiff Laborers Local 91, Laborers International Union of North America, AFL–CIO ("Laborers Local 91") sought to compel arbitration

among itself and defendants, the Building Industry Employers Association of Niagara County, New York, Inc. ("the Association") and Higgins Erectors & Haulers, Inc. ("Higgins"). The underlying dispute concerns Higgins's assignment of work on a demolition project to Local No. 9 of the International Association of Bridge, Structural and Ornamental Iron Workers ("Iron Workers Local 9"). Laborers Local 91 claims that the assignment violated the collective bargaining agreement ("the cba") then in effect[1] between it and the Association, to which Higgins is bound as a member of the Association. Higgins and the Association are also signatories to a cba with Iron Workers Local 9 covering the same period.

When attempts to resolve the dispute by representatives of the two international unions failed, Laborers Local 91 requested a job decision from the Impartial Jurisdictional Dispute Board ("the IJDB"). While the IJDB was considering the matter, Laborers Local 91 filed a contract grievance with the Association. The Association declined to submit the matter to the Federal Mediation and Conciliation Service ("the FMCS") or to proceed to arbitration as provided by the cba claiming that the matter was a jurisdictional dispute within the exclusive province of the IJDB. Higgins subsequently notified the IJDB that work on the project had been completed. The IJDB then withdrew from the matter without rendering a decision as to which union was entitled to the work assignment.

Laborers Local 91 then brought the instant action under section 301 (29 U.S.C. § 185) of the Labor Management Relations Act ("the LMRA") and the United States Arbitration Act, 9 U.S.C. § 4, seeking to compel the Association and Higgins to submit the dispute to the FCMS or to proceed directly to arbitration as provided by the cba.

Laborers Local 91 moved for summary judgment under Fed.R.Civ.P. rule 56 and the Association moved for an order joining additional parties. Iron Workers Local 9's international union sought intervention.

By my Memorandum and Order entered August 13, 1981, I denied Laborers Local 91's motion without prejudice, ordered it to join Iron Workers Local 9 as a defendant and declined the intervention bid of the latter's international union. Now before me are Laborers Local 91's renewed motion for summary judgment and the cross-motions for summary judgment of the Association and of Iron Workers Local 9.

Laborers Local 91 argues in the alternative that either it is not bound to pursue resolution of this dispute through the IJDB or that, once that body refused to act, the only available and proper mechanism by which to resolve the dispute is the grievance and arbitration procedures provided for in its cba with the Association. The Association and Higgins argue that the IJDB is the exclusive forum in which to resolve disputed work assignments but that, if arbitration is ordered, it must include all affected parties. Iron Workers Local 9 agrees that a tripartite proceeding is the only proper mechanism for resolving jurisdictional disputes, but asserts that it cannot be ordered to participate in tripartite arbitration under the terms of its cba.

■ As intimated in my earlier Memorandum and Order, I consider the instant dispute to involve more than whether Higgins violated the cba in effect between the Association and Laborers Local 91. Where, as here, the dispute concerns the conflicting claims of two unions to a given work assignment, a jurisdictional dispute is presented. See Carey v. Westinghouse Corp., 375 U.S. 261, 263, 84 S.Ct. 401, 404, 11 L.Ed.2d 320 (1964). The task before me then is to determine the forum intended by the parties for the resolution of such disputes.

In determining the intent of the parties to a cba, the courts have sanctioned an inquiry beyond the four corners of that document. A cba is more than a private contract. It "calls into being a new common law, the common law of a particular industry or of a particular plant." *Steel-*

---

1. Laborers Local 91's cba covered the period 1978–1981.

*workers v. Warrior & Gulf Co.,* 363 U.S. 574, 579, 80 S.Ct. 1347, 1350, 4 L.Ed.2d 1409 (1960); *see also John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964). The United States Supreme Court has thus declared that:

"In order to interpret such an agreement it is necessary to consider the scope of other related collective bargaining agreements, as well as the practice, usage and custom pertaining to all such agreements. This is particularly true when the agreement is resorted to for the purpose of settling a jurisdictional dispute over work assignments." *See Transportation Union v. U.P.R. Co.,* 385 U.S. 157, 161, 87 S.Ct. 369, 371, 17 L.Ed.2d 264 (1966).

Upon applying these principles to the construction industry, the courts have uniformly rejected the approach advanced by Laborers Local 91. They have either refused to enforce bipartite arbitration awards and directed the parties to petition the IJDB for resolution of the jurisdictional dispute or have sustained the decision of that body as binding upon the parties. *See, e.g., Drywall Tapers & Pointers v. Operative Plasterers,* 601 F.2d 675, 679 (2d Cir.1979), *Sheet Metal Wkrs. Int. Ass'n v. Los Alamos Constr.,* 550 F.2d 1258 (10th Cir.1977), *Local 416, Sheet Metal Wkrs. I.A. v. Helgesteel Corp.,* 507 F.2d 1053 (7th Cir.1974), and *Stone & Webster, Etc. v. Local Union No. 38, Etc.,* 461 F.Supp. 882 (N.D.N.Y.1978).

Laborers Local 91 argues nonetheless that, if the parties' agreement reflects a clear intent to resolve such disputes through bipartite arbitration, they are free to do so. It further contends that the Laborers Local 91's cba with the Association reflects such an intent. Laborers Local 91 relies on the language in *Stone & Webster* (*supra,* at 892) to the effect that the Court would not sanction a partial adjudication of a jurisdictional dispute by one union, with the possibility that the other union would then seek and obtain a conflicting ruling under its grievance procedure, "absent convincing evidence that Stone & Webster [the employer] agreed to be bound in such a fashion." Conceding, arguendo, that the employer could so agree, the only evidence of such an intent on the part of the Association is contained in Article IX of the 1978–81 cba between Laborers Local 91 and the Association.[2]

Laborers Local 91 contends that neither party has attempted to exercise its option under Article IX to reopen and consider for adoption the Plan for Settlement of Jurisdictional Disputes in the Construction Industry established by the Building and Construction Trades Department, AFL–CIO, which embodies the IJDB. Thus, it reasons that the parties never intended to be bound to the IJDB.

Whatever the intent of the court's dictum in *Stone & Webster,* Article IX is hardly "convincing evidence" that the Association intended to allow itself to be subjected to the risk of contrary yet binding arbitration rulings. On its face, it indicates to the contrary that the parties intended to consider seriously a plan which would protect against that very risk. Moreover, the Association vociferously denies the intent ascribed to it by Laborers Local 91. As evidenced by correspondence and contract proposals presented by it during prior contract negotiations (*see,* February 13, 1981 Affida-

---

2. Section 1 of Article IX of Laborers Local 91's 1978–81 cba provides, in part, that:

"During the term of this Agreement there shall be no strikes, lockouts, work stoppages, slow down or picketing because of any dispute regarding jurisdiction of work. This provision shall not apply however, if after the jurisdictional dispute has been settled by final decision of the N.L.R.B. or through the Grievance Procedure or binding arbitration, the Employer involved refuses to abide by the decision."

Section 2 of the same Article provides that:

"If, during the term of this Agreement, the Associated General Contractors of America and the Building and Construction Trade Department, AFL–CIO agree to a plan for the settlement of jurisdictional disputes to which the Laborers International Union of North America is bound or is obligated to be bound, then either party hereto, upon ten (10) days notice to the other, may reopen this contract for the purpose of the consideration and adoption of a provision relative to said plan for the settlement of jurisdictional disputes, but for no other purpose."

vit of Ira M.J. Hoven, Exhibits E–M), the Association has consistently attempted to prevent the presentation of jurisdictional disputes to any forum other than the IJDB. That no clause embracing that body as the chosen forum appears in the cba with Laborers Local 91 is, according to the Association, solely the result of plaintiff's resistance.

Inasmuch as I am not free to resolve conflicting contractual interpretations upon a motion for summary judgment (*see Heyman v. Commerce and Industry Insurance Co.*, 524 F.2d 1317 (2d Cir.1975)), the presence of such a dispute clearly prevents entry of any such judgment. Though I am inclined to grant such relief to the Association, the very ambiguity of Article IX and the absence of evidence that the Association has otherwise agreed to be bound to the IJDB procedures prevents me from doing so.[3]

If the Association is able to establish that it has agreed to be bound, Laborers Local 91 is left with no choice but to abide by the terms of the Plan under the Constitution of the Building and Construction Trades Department. Article X of the Constitution provides that:

> "All jurisdictional disputes between or among affiliated National and International Unions and their affiliated Local Unions and employees shall be settled and adjusted according to the present plan established by the Building and Construction Trades Department * * *. Said present plan or any other plan adopted in the future shall be recognized as final and binding upon the Department and upon all affiliated National or International Unions and their affiliated Local Unions."

Article VII, Section 5, of the Plan states unequivocally that

> "It shall be a violation of this Agreement for any Local Union, International Union, Employer or Employers' Association to enter into any agreement, resolution or stipulation that attempts to establish any jurisdiction which deviates from the spirit and intent of the Agreement and Rules and Regulations of the Plan."

The primary purpose of the Plan is the creation of a forum for the resolution of jurisdictional disputes capable of binding all affected parties by a single decision. Because that purpose would be frustrated by bipartite arbitration, neither a union nor an employer who has assented or stipulated to the Plan can seek to compel such arbitration.

Laborers Local 91 argues in the alternative that, even if it is bound by the rules and regulations of the IJDB, where that body fails to render a decision on the merits the parties must be free to pursue arbitration.

It is the apparent practice of the IJDB to divest itself of a dispute when work on the disputed assignment has been completed. While this is not the first instance in which a court has been presented with the IJDB's refusal to act, it is *sui generis* in that the aggrieved party has been deprived entirely of an opportunity to present its case on the merits of a disputed assignment to any forum and has thus been afforded no remedy at all.

In cases where the dispute has given rise to a possible unfair labor practice, resort can be had to the National Labor Relations Board ("the NLRB") under section 10(k) (29 U.S.C. § 160(k)) of the National Labor Relations Act. *See Local No. 383, Iron Workers, AFL–CIO (J.P. Cullen & Son Construction Company)*, 235 NLRB 463 (1978), and *Local Union No. 481, Sheet Metal Workers, International Association, AFL–CIO (Young Plumbing & Supply, Inc.)*, 224 NLRB 993 (1976). The NLRB cannot assume jurisdiction over a disputed work assignment if the parties have agreed upon a voluntary method for adjusting the dispute. Nonetheless, where the admittedly chosen

---

**3.** Article II of the Plan provides that an employer can become bound to its procedures by written assent, or by stipulating to that effect, or by virtue of membership in an employer association which has so stipulated. The current record leaves me in doubt whether the Association has taken the required steps.

forum, the IJDB in both of the above cases, has refused to settle the matter, the NLRB has proceeded to do so. In *Cullen, supra,* at 465, the NLRB held:

> "Such refusal of the IJDB to act is not an affirmative determination of the merits of the dispute, but rather precludes its being, despite the formal agreements of the parties, an agreed-upon method for voluntary resolution of the dispute."

In other instances where the IJDB has refused to act because of the refusal of one party to submit the case to that forum, the courts have ordered the parties to resubmit the dispute for a final decision. In this case, Laborers Local 91's international union failed in its attempt to gain a decision from the IJDB and none of the parties has indicated that the IJDB would hear the case if again requested to do so.

Hypothetically, the IJDB's practice may reflect a conscious intent to leave the allegedly aggrieved union without a remedy rather than to risk a determination that the employer breached its cba with the petitioning union and is liable in damages for such breach.[4] If that is the Plan's intended effect, then Laborers Local 91 may not redress outside of the IJDB. Such speculation is not, however, the solid ground upon which summary judgment must rest.

Thus, even if the parties are bound to the Plan but defendants are unable to establish a clear intent to cut off alternate avenues to a resolution of this dispute, I would be free to consider the alternative of tripartite arbitration. Tripartite arbitration has been ordered in cases where both unions' cba's include broad arbitration clauses. *See Columbia Broad. Sys., Inc. v. American Record. & Broad. Ass'n,* 414 F.2d 1326 (2d Cir. 1969), and *Baltimore Typographical Union v. A.S. Abell Co.,* 441 F.Supp. 596 (D.Md. 1977). Although research fails to disclose its use as a means to fill in the gap left by the withdrawal of the IJDB, if authority for such can be found in the agreements of the parties, then the strong federal prefer-

ence for arbitration as a means of resolving unforeseen conflicts would favor its application here.

Iron Workers Local 9 argues, however, that Article 11 of its cba with the Association precludes arbitration in any case involving jurisdictional disputes. As indicated in my earlier Memorandum and Order, I am not convinced that the exclusionary language in Iron Workers Local 9's cba is not susceptible of a contrary interpretation. The parties could quite reasonably have intended the clause to be read in conjunction with Article 2, Section 3, in which Iron Workers Local 9 and the Association agree to abide by the decisions of the IJDB. If so, the exclusion is no broader than the scope of the IJDB's jurisdiction.

The Plan itself leaves room for procedures which do not deviate in spirit and intent from its terms. Inasmuch as the heart of the Plan is a tripartite proceeding, the ordering of tripartite arbitration would not so deviate.

Ultimately, whether tripartite arbitration can be compelled turns firstly on the question whether the Association is bound to the rules and procedures of the IJDB, secondly on the intent of the framers of the Plan to preclude further proceedings of any kind once the IJDB has refused to hear the matter, and thirdly on whether Iron Workers Local 9's cba, by itself, precludes arbitration of such a dispute. For the reason that none of these questions is free from doubt, summary judgment will not be granted to any party. Accordingly, the motions of the parties for summary judgment are hereby ORDERED denied without prejudice.

---

4. Laborers Local 91 implies that the IJDB is incapable of awarding damages. Though no mention of damages is made in the Plan, the Plan does not explicitly preclude a monetary award.